IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ELMER RICHARD PETERSEN,<br><br>Defendant. | CR 22-91-BLG-SPW<br><br>ORDER ON DEFENDANT'S MOTION TO SUPPRESS |

Before the Court is Defendant Elmer Petersen's Motion to Suppress. (Doc. 25). Petersen seeks to suppress all evidence in this case on the grounds that law enforcement lacked reasonable suspicion to seize his vehicle and lacked probable cause to search the vehicle. (Doc. 25 at 1). The United States opposes the motion. (Doc. 27). On May 11, 2016, the Court held a hearing on the matter. (Doc. 33). Considering the parties' briefing and the testimony and evidence presented at the hearing, the Court denies Defendant's motion.

I.  **Factual Background**

Agent Gabriel Flores, with the United State Border Patrol and cross-deputized to the Eastern Montana Drug Task Force, was stationed in Miles City Montana, and conducted the investigation into Petersen. In July 2021, Flores received a tip from a law enforcement partner in Billings regarding J.K. Bertolett,

1

who was thought to be a drug distributor in Miles City. Flores followed up on the tip but found that Bertolett had died and the investigation ended. Several months later, in October 2021, Flores was debriefing with another agent who had a lead regarding a potential source interested in providing information. The agent told Flores that the source was a known drug user and distributor who had previously provided accurate information in a prior investigation. The pair of agents visited the source's residence, where the source discussed several individuals involved in the Miles City drug trafficking scene. The officers apparently found the information credible because it was not public information and would only be known to someone with firsthand knowledge. At the end of the interview, Flores provided his contact information to the source with instructions to reach out with any new information.

Days later, on October 10, the source contacted Flores and alleged that an individual going by "Pete" would arrive in Miles City that day. The source said that Pete was a sex offender from Wyoming. Flores asked the source to find out Pete's full name. The source called back shortly after and provided Flores with the person's full name—Elmer Petersen—and a description of Petersen's vehicle. Flores checked this information against public information databases and confirmed that someone named Elmer Petersen was a registered sex offender and

2

had a vehicle matching the source's description. Flores notified patrol units and circulated Petersen's photograph.

In the afternoon, the source contacted Flores again, stating that Petersen was in town and headed to Stacey Hirsch's residence outside of Miles City. Flores was familiar with the residence as regularly connected to drug use and distribution.

The residence was situated in a subdivision of sparce ranchettes in a relatively treeless area north of Miles City. Flores drove up the highway to the residence intending to conduct surveillance, but given the lonesome and exposed nature of the area, Flores was only able to briefly glass the residence with binoculars. Flores observed a vehicle matching the source and database's description but could not discern the plate numbers or confirm the precise color of the vehicle. Wanting to avoid being identified and tipping off the suspects in the residence, Flores left the area and began to coordinate a possible interdiction on the suspect.

Meanwhile, the source contacted Flores, stating that Petersen had a large amount of drugs in his possession and would be heading south back toward Miles City soon. With this information, Flores parked his car at a junction where Petersen would need to pass to return to Miles City and waited. Soon after, Flores saw the vehicle matching the description pass by and began his pursuit. Although his sight was obscured, Flores believed that the man driving was Petersen because

he matched the photo from the database. Flores contacted the lead patrol unit to tell them Petersen's route and told patrol to initiate a traffic stop based on the information gathered.

When he was pulled over, Petersen cooperated and did not have any drugs or weapons on his person. Officers handcuffed Petersen and took his wallet and car keys. Petersen was released from the scene while officers detained the car and applied for a search warrant. Judge Olivia Rieger reviewed the application and granted the search warrant. Inside the trunk, officers found methamphetamine and other drugs in a black lockbox.

## II.  Legal Standards

### A.  Stop and Seizure

The Fourth Amendment allows police to conduct investigative stops when the officers have "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). Reasonable suspicion requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct. *United States v. Thomas*, 211

F.3d 1186, 1189 (9th Cir. 2000). "The quantum of proof needed for reasonable suspicion is less than a preponderance of evidence and less than probable cause." *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000). The standard is "not a particularly high threshold to reach." *United States v. Valdes-Vegas*, 738 F.3d 1074, 1078 (9th Cir. 2013).

A court must look at the totality of the circumstances of each case when determining whether reasonable suspicion existed. *Arvizu*, 534 U.S. at 273. Each fact cannot be considered individually and must be evaluated in the context of the case. *Valdes-Vegas*, 738 F.3d at 1078. In other words, a series of factors, that when looked at individually are consistent with innocent behavior, can amount to reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 9-10 (1989). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Arvizu*, 534 U.S. at 273.

B. *Search Warrant*

Where a search is conducted by state law enforcement pursuant to a state warrant and is not otherwise "federal in character," the warrant need only conform to the requirements of the U.S. Constitution, rather than to the procedural requirements of Rule 41 of the Federal Rules of Criminal Procedure. *See United States v. Bookout*, 810 F.2d 965, 967 (10th Cir. 1987). The Fourth Amendment

guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* "Probable cause means only a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances." *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238). Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Needham*, 718 F.3d 1190, 1194 (9th Cir. 2013). "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (citing *Gates*, 462 U.S. at 246).

To withstand constitutional scrutiny, a warrant must particularly describe the place to be searched and the things to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). A particularized warrant prevents general searches and "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Id.* at 561 (citation and internal quotation omitted). The "test for determining the sufficiency of the warrant description is whether the place to be searched is

6

described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir. 1985) (internal quotation omitted). The Court must treat the magistrate's decision to grant the warrant application with deference and inquire whether there was a "substantial basis" for the issuing judge to conclude that probable cause existed. *See Massachusetts v. Upton*, 466 U.S. 727, 733 (1984).

## III. Analysis

The United States argues that the source's information and corresponding investigation sufficiently supports a finding of reasonable suspicion that Petersen was in possession of a firearm and large quantity of drugs. (Doc. 27 at 7). When determining whether a tip is sufficient to support reasonable suspicion or probable cause, courts must consider the reliability or veracity of the information, as well as the basis of the tipster's knowledge. *United States v. Rowland*, 464 F.3d 899, 907 (9th Cir. 2006) (citing *Gates*, 462 U.S. at 238). In *Rowland*, the Ninth Circuit considered four factors bearing on a tip's reliability and veracity: (1) whether the informant is known, rather than anonymous; (2) whether the informant has a proven track record of reliability, rather than an unproven informant; (3) whether the informant reveals the basis of his knowledge; and (4) whether the tip provides

"detailed predictive information about future events that is corroborated by police observation." *Id.*

Petersen concedes that the first and third factors are met but argues that the remaining two factors substantially weigh against a finding of reasonable suspicion. (Doc. 26 at 7). The United States contends that all four factors are satisfied. (Doc. 27 at 8).

The source's identity was known to the officers—he was not an anonymous tipster. Flores testified that he knew that the source had previously given reliable information to law enforcement, although Flores conceded that he had not personally worked with the source before. The source revealed the basis of his knowledge and specifically and personally corroborated the information that Petersen possessed a large quantity of drugs. The source was not made concrete promises about leniency in return for his information, further bolstering his credibility. Finally, the officers independently corroborated the information provided by the source prior to stopping Petersen. The source gave a timeline when Petersen would arrive in Miles City, head to the Hirsch residence, and return to town, matching what actually occurred. The source stated the type of car Petersen would be driving and Flores saw a car matching that description at Hirsch's residence. Given these facts, the Court agrees with the United States that the *Rowland* factors support a finding of reasonable suspicion. Accordingly,

officers did not violate Petersen's Fourth Amendment rights when they stopped Petersen.

Petersen argues that, even if the officers had reasonable suspicion to stop Petersen, they did not have reasonable suspicion to seize Petersen's vehicle or frisk him for weapons. The Court disagrees. Reasonable suspicion is a relatively low hurdle. *Valdes-Vegas*, 738 F.3d at 1078. The source was reliable, as analyzed previously, and officers reasonably suspected that Petersen was armed and in possession of distribution quantities of drugs based on the source's firsthand knowledge. This indicated to officers that Petersen was potentially armed and that drugs were inside his vehicle. As with the stop, officers possessed at least reasonable suspicion to seize the vehicle pending a search warrant application and to frisk Petersen.

Petersen challenges the search warrant, asserting that it should not have been issued based on the information provided in the affidavit. (Doc. 26 at 16). The Court must treat the issuing magistrate's decision to grant the warrant application with deference and inquire whether there was a "substantial basis" for the issuing judge to conclude that probable cause existed. *See Upton*, 466 U.S. at 733. Here, the Court cannot say that Judge Rieger did not have a substantial basis for a finding of probable cause when she issued the search warrant. The application provides a detailed description of the investigative steps Flores and other officers took in

vetting the source of information and corroborating key details. Officers confirmed Petersen's identity, confirmed that the vehicle and travel matched the source's information, and had obtained no information otherwise showing the source's unreliability. This information creates a substantial basis supporting a fair probability that evidence of drug distribution would be discovered through a search of the vehicle. Accordingly, the Court must uphold the validity of the search warrant.

IV. Conclusion

For the reasons discussed above, IT IS ORDERED that Defendant's Motion to Suppress (Doc. 25) is DENIED.

DATED this 2nd day of June, 2023.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge